IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED

SEP 1 4 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

COLON HEALTH CENTERS OF AMERICA, )
LLC, et al.,                     )
                                 )
                  Plaintiffs,    )
                                 )        Civil Action No. 1:12CV615
V.                               )
                                 )
BILL HAZEL, et al.,              )
                  Defendants.    )
                                 )

## MEMORANDUM OPINION

This case is before the Court on State Defendants' Federal Rules
of Civil Procedure 12(a)(1)(A)(i) and 12(b)(6), Moton To Dismiss
Plaintiffs' Complaint for failure to state a claim upon which relief
may be granted.  Plaintiffs raise four separate claims for relief
arising from the certificate of public need requirement of the
Commonwealth's Medical Care Facilities Certificate of Public Need
(COPN) laws.  Va. Code Ann. §§ 32.1-102.1 through -102.13.
Plaintiffs claim that these laws violate the Privileges or
Immunities, Due Process of Law, and Equal Protection of the Laws
clauses of the Fourteenth Amendment.  Plaintiffs also assert a
Dormant Commerce Clause violation.

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss in
the Twombly era, a Court still "accept[s] the facts alleged in the
complaint as true and construe[s] them in the light most favorable

to the plaintiff;" "[h]owever, to survive a motion to dismiss, the complaint must 'state[ ] a plausible claim for relief.'" Coleman v. Md. Court of Appeals, 626 F.3d 187, 189, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)); see also, J.S. v. Thorsen, 766 F. Supp. 2d 695, 701 (E.D. Va. 2011) ("A court considering a motion to dismiss filed pursuant to Rule 12(b)(6) must assess the legal sufficiency of the allegations in the plaintiff's complaint." (emphasis added) (citing Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009)). Of course, the purpose for the motion is to have the Court evaluate, not accept as true, "legal conclusion[s, even if] couched as [] factual allegation[s]." Papasan v. Allain, 478 U.S. 265, 286 (1986); accord Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009). "Nor must [a court] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). Furthermore, factual allegations that "are 'merely consistent with' liability are not sufficient" to state a plausible claim, and are not made so by clothing them with "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" See A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Ashcroft v.

Iqbal, 556 U.S. 662, 678-79 (2009)).

Colon Health Centers of America, LLC and Washington Imaging Associates--Maryland, LLC (d/b/a Progressive Radiology), collectively "plaintiffs" or, individually, "Colon Health" and "Progressive," desire to perform certain medical services in the Commonwealth. Colon Health desires to partner with other gastroenterologists to open several centers in Virginia that would offer non-invasive colon cancer screening, which would necessitate Colon Health's purchase of a CT scanner after obtaining a certificate of need. Progressive desires to open a new MRI office in Northern Virginia to provide orthopedic and neurological imaging, outfit it with a newly purchased MRI scanner, and staff it with current employees already licensed to practice radiology in Virginia. Neither a new office may be opened, nor an MRI scanner purchased, without first obtaining a certificate of need for each.

Plaintiffs allege that but for this requirement, they would offer new medical services in Virginia, but cannot afford to invest the enormous resources required for a certificate of need application. Plaintiffs further assert that Virginia's COPN laws violate Plaintiffs' right under the Commerce Clause to participate in the national marketplace and the flow of interstate commerce, plaintiffs' right to Equal Protection of the Laws by irrationally treating similar medical services and equipment differently,

3

plaintiffs' right to earn a living in the occupation of their choice subject only to reasonable government regulation, guaranteed by the Due Process of Law clause, and plaintiffs' right to earn a living in the occupation of their choice free from unreasonable or unnecessary government regulation, guaranteed by the Privileges or Immunities Clause.

Virginia's COPN program is a regulatory program administered by the Virginia Department of Health, that seeks to contain health care costs while ensuring financial and geographic access to quality health care for Virginia citizens at a reasonable cost. Though revised, repealed, and readopted over the years by the General Assembly, Virginia's COPN statutes at present apply to projects, defined by Va. Code Ann. § 32.1-102.1 to include the establishment of a medical care facility, such as specialized centers or clinics developed for the provision of computed tomographic (CT) scanning, magnetic resonance imaging (MRI), and nuclear medicine imaging, except for the purpose of nuclear cardiac imaging, or the addition by an existing medical care facility of any medical equipment for the provision of computed tomographic (CT) scanning and magnetic resonance imaging (MRI). No person can commence any project without first obtaining a certificate issued by the Commissioner. The certificate referenced is a certificate of public need for a project required by this article, and the Commissioner is the State Health

4

Commissioner, Ms. Karen Remley, a state defendant to this action. Nursing facilities or nursing homes affiliated with facilities that meet certain criteria do not need to apply for a certificate that there exists a public need for a proposed project.

No certificate may be issued unless the Commissioner has determined that a public need for the project has been demonstrated, a determination that must consider the eight factors set out in the code sections. The applicant seeking a certificate of need has the burden to produce documentation in their application that their project addresses these factors and to prove that the project is consistent with the applicable requirements and review policies. To begin the 190-day review process, an applicant files a letter of intent with the Commissioner, requesting the appropriate application forms. Applications are then filed both with the Virginia Department of Health ("the Department") and the appropriate regional health planning agency, and the Department must determine and notify the applicant within 10 days as to whether the application is complete. If an application is determined to be complete within the requisite time, it will be placed in the designated "batch," beginning the 190-day review cycle. To be considered in the appropriate batch as part of a particular 190-day review cycle, the application must be determined to be complete within 40 calendar days from the date of submission, or it shall be refiled in the next batch

for like projects. To ensure that applications can be deemed complete in time for the appropriate application batch, applications must generally be filed 30 days prior to the date on which the applications are due to be considered as a particular batch of applications.

Each batch is grouped according to type of project, once the review process has begun, and considered on a 190-day review cycle. Applications for CT scanning and MRI equipment are required by statute to be considered together in the radiation therapy batch of applications for certificates, labeled by regulation as Batch D/F and also part of a 190-day review cycle. The batching process ensures that applications to provide certain services be considered as competing applications by the Commissioner, unless the Commissioner elects to waive the review schedule requirements, or the project is of the type that receives expedited review.

Once the review process has begun, the appropriate regional health planning agency must, within 60 days, complete the initial review of all applications within a batch and hold a public hearing in or near the site of the proposed project to receive comments from local governing bodies and the public. Any person affected by a proposed project under review may directly submit written opinions, data and other information to the appropriate regional health planning agency and the commissioner for consideration prior to their

final action. The applicant is then entitled to respond to public comments, and the regional health planning agency must then, within 10 days following the close of the 60 day review period, provide the Department its recommendation on each application and its reasons therefor, or the Department will proceed as though the regional health planning agency has recommended project approval without conditions or revisions. Within 10 more days, the Department must complete its review and transmit its recommendation to the applicant and, within 5 more days, communicate to the applicant its determination whether an informal fact-finding conference is necessary.

An informal fact-finding conference will be held either if the Department deems it necessary or if one is requested by a person who has submitted under oath grounds that give the person good cause for being made party to the case. Good cause is defined to mean that there is significant, relevant information not previously presented at and not available at the time of the public hearing, there have been significant changes in factors or circumstances relating to the application subsequent to the public hearing, or there is a substantial material mistake of fact or law in the department staff's report on the application or in the report submitted by the regional health planning agency. If an informal fact-finding conference is held, the record on the application must be closed within 30 calendar

days after the date for holding the informal fact-finding conference, if such a conference is not held, the record shall be closed on the earlier of the date established for holding the informal fact-finding conference or the date that the Department determines an informal fact-finding conference is not necessary. The date the record closes is significant: In any case when a determination whether a public need exists for a project is not made by the Commissioner within 70 calendar days after the closing of the record, the application shall be deemed to be approved and the certificate shall be granted.

Whether issued upon an express finding of public need or simply deemed to be approved, the certificate's issuance (or denial) is subject to appeal under the Virginia Administrative Process Act, by either the applicant or a person made a party for good cause. Once issued, a certificate is valid for 12 months and is non-transferrable, but may be extended indefinitely when satisfactory completion of a project has been demonstrated. However, a certificate also may be revoked for a number of reasons. Furthermore, the Commissioner, State Board of Health ("the Board"), or the Attorney General of Virginia may apply to a circuit court to enjoin any project which is constructed, undertaken or commenced without a certificate or to enjoin the admission of patients to the project or to enjoin the provision of services through the project.

And any person willfully violating or refusing, failing or neglecting to comply with the certificate of need requirement is guilty of a Class 1 misdemeanor and may be subject to civil penalties and fines.

Because the claimed Fourteenth Amendment rights of plaintiffs, as U.S. citizens that are allegedly impinged by Virginia's COPN laws--the right to engage in the medical profession free of unreasonable state regulation--are not fundamental, the Court must defer to reasonable legislative judgments as to the propriety and need for the COPN laws. See U.S. Const. amend. XIV; Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 488 (1955) ("The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought."); Armour v. City of Indianapolis, 132 S. Ct. 2073, 2080 (2012) ("[W]here 'ordinary commercial transactions' are at issue, rational basis review requires deference to reasonable underlying legislative judgments." (quoting United States v. Carolene Products Co., 304 U.S. 144, 152 (1938) in support of applying the principle to due process claims, and citing New Orleans v. Dukes, 427 U. S. 297, 303 (1976) (per curiam for the principle's application to equal protection claims)). Specifically, claims that state economic legislation deprives a citizen of Due Process of Law, or fails to extend to a citizen the

Equal Protection of the Laws must be rejected "'unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators.'" Armour, 132 S. Ct. at 2080 (quoting Carolene Products, 304 U.S. at 152). And "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," id. (quoting Heller v. Doe by Doe, 509 U.S. 312, 320 (1993)), including bases that the government has not offered. "Thus, 'it is difficult to exaggerate the burden' that a party must overcome to demonstrate that economic legislation fails rational basis review." Star Scientific, Inc. v. Beales, 278 F.3d 339, 348-49 (4th Cir. 2002) (quoting Holland v. Keenan Trucking Co., 102 F.3d 736, 740 (4th Cir. 1996)).

Although it is true that the Due Process Clause includes a substantive component that provides some protection against economic legislation interfering with property interests, this protection is severely limited." Star Scientific, 278 F.3d at 348; accord Locke v. Shore, 634 F.3d 1185, 1195 (11th Cir. 2011) ("Rational basis review applies to Due Process and Equal Protection Clause challenges to state professional regulations, because the right to practice a particular profession is not a fundamental one."). "To comport with the limited scope of substantive due process protection, economic

10

legislation need only be rationally related to a legitimate government interest." Star Scientific, 278 F.3d at 348. The Court need not find "mathematical precision in the fit between justification and means." Id. at 348 (quoting Concrete Pipe & Prods. of Cal. v. Constr. Laborers Pension Trust for So. Cal., 508 U.S. 602, 639 (1993)). Nor does "'the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.'" Id. (quoting Lee Optical, 348 U.S. at 487-88). "The courts defer to rational legislative decisionmaking with respect to economic legislation because the legislatures are better equipped to consider and evaluate the 'profound and far reaching consequences' that such legislation may have." Id. at 349 (quoting Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 83 (1978)). "Thus, the Supreme Court has admonished that 'it is for the legislature, not the courts, to balance the advantages and disadvantages' of economic legislation." Id. at 349 (quoting Lee Optical, 348 U.S. at 487).

The concept of certificate of need regimes, which many states enforce, is to avoid private parties making socially inefficient investments in health-care resources they might make if left unregulated. A certificate of need program corrects the market by

requiring preapproval for certain investments and, in theory, thereby ensures that providers will make only necessary investments in health care.   Nat'l Gerimedical Hosp. & Gerontology Ctr. v. Blue Cross, 452 U.S. 378, 383-84, 385-86 (1981) (noting that Congress enacted the now-repealed National Health Planning and Resources Development Act of 1974 to create a statutory scheme that would assist in preventing overinvestment in and maldistribution of health facilities, and, toward that end, required States to maintain certificate-of-need programs that were the basic component in an overall effort to control the unnecessary capital expenditures which contribute so greatly to the total national health bill. The Department of Health, explains that the program seeks to contain health care costs while ensuring financial and geographic access to quality health care for Virginia citizens at a reasonable cost.

Because "'it is for the legislature, not the courts, to balance the advantages and disadvantages'" of economic legislation," Star Scientific, 278 F.3d at 349 (quoting Lee Optical, 348 U.S. at 487), plaintiff's claims on the benefits of allowing them to engage in their profession in the Commonwealth, is entirely beside the point. So too are plaintiffs' claims about the negative effects of certificate-of-need laws generally or in the Commonwealth.   There is a legitimate governmental interest in reducing the cost of medical services and ensuring its broad availability.   See Florida ex rel.

Att'y Gen. v. HHS, 648 F.3d 1235, 1363 (11th Cir. 2011), rev'd on other grounds, No. 11-398 (June 28, 2012). And the capital costs associated with the provision of certain medical services that require the use of expensive medical equipment or facilities, and that are passed on to the payers, may be thought to be increased by multiple service providers in a single community providing the same health services. The general availability of those services to less well-to-do areas may also be thought to be decreased by allowing the market to run its course.

Thus, the General Assembly could rationally conclude that if there were fewer providers of the same medical services in a particular market, and less equipment and facilities, the amount spent on the services as a whole and with regard to each patient would decrease. Even if plaintiffs had evidence that Virginia's COPN laws do not in fact advance that interest in reducing the cost of medical services, that fact would be of no moment because a legislative choice is not subject to courtroom factfinding, but may be based on rational speculation unsupported by evidence or empirical data. FCC v. Beach Commc'ns, 508 U.S. 307, 315 (1993). Accordingly, plaintiffs' due process claims must be rejected. See, e.g., Locke, 634 F.3d at 1195-97 (rejecting a claim that a license requirement for interior designers "violates their substantive due process right to earn a living in the profession"); Madarang v. Bermudes, 889 F.2d 251,

253-54 (9th Cir. 1989) (rejecting a claim that denial of a certificate of need violates substantive due process by burdening "the right to pursue a calling").

In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. Beach Commc'ns, 508 U.S. at 313. Nor should the Court give any regard to plaintiffs' allegations that defendants possess no evidence supporting the exemption of nuclear cardiac imaging or nursing homes from Virginia's COPN laws or evidence supporting the conclusion that applying those laws to services like those plaintiffs want to provide advances any legitimate state interest. For a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. Beach Commc'ns, 508 U.S. at 315; see, e.g., Locke, 634 F.3d at 1196, rejecting Appellants' argument that the legislature's safety concern does not provide a rational basis for the interior design license requirement because it was unfounded, despite evidence that other states had since considered and rejected the notion that the unlicensed practice of interior design poses safety concerns, because the State has no burden to produce evidence

14

of the safety benefits flowing from its regulations. States are not required to convince the courts of the correctness of their legislative judgments. Rather, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker. Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464 (1981) (quoting Vance v. Bradley, 440 U.S. 93, 111 (1979)).

Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function. Beach Commc'ns, 508 U.S. at 315 (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 365 (1973) (quoting Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 510 (1937))). Thus, out of respect for the legislative role, courts do not require a legislature to articulate its reasons for enacting a statute and it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. Id. (quoting U.S. R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 179 (1980)). And these restraints on judicial review have added force where the legislature must necessarily engage in a process of line-drawing. Fritz, 449 U.S. at 179).

The plaintiffs have failed to provide even a premise for an equal

protection challenge. Laws that apply evenhandedly to all comply with the Equal Protection Clause. <u>Vacco v. Quill</u>, 521 U.S. 793, 800 (1997). Here, there is no distinction between persons based on any classification, but only different burdens placed on different activities. Plaintiffs posit the non-existence of any reason for requiring a certificate of need before buying some medical equipment, and not others, or for requiring a certificate before allowing a medical provider to offer certain medical services, and not others. Plaintiffs point to the exception from the COPN laws for nuclear cardiac imaging, and claim that there is no reason for or, if so, no evidence to support the reason for applying the COPN laws to other kinds of medical imaging, but not nuclear cardiac imaging.

The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, <u>Armour</u>, 132 S. Ct. at 2080 (quoting <u>Heller</u>, 509 U.S. 312, 320 (1993)), and the reasons that will defeat the challenge need not be supported by evidence or empirical data, <u>Beach Commc'ns</u>, 508 U.S. at 315, but instead must be upheld unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators. <u>Armour</u>, 132 S. Ct. at 2080 (quoting <u>Carolene Products</u>, 304 U.S. at 152); <u>see</u>, <u>e.g.</u>, <u>Romer v. Evans</u>, 517 U.S. 620, 632 (1996). A law will be sustained if it

16

can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.  Where the plainly rational basis for the regulation is holding down healthcare costs in the relevant market by limiting wasteful duplication of equipment by medical providers, the Virginia General Assembly may rationally distinguish between medical equipment and services necessitating significant capital expenditures and those that do not.  It is also conceivable that the General Assembly has determined that the demand for access to nuclear cardiac imaging far outstrips the current number of service providers or even that the General Assembly desires to experiment with deregulation of nuclear cardiac imaging to decide whether to deregulate further.  See Beach Commc'ns, 508 U.S. at 316 noting that a legislative decision about the bounds of the regulatory field, are unavoidable components of most economic or social legislation, and that the necessity of drawing the line somewhere between the regulated and unregulated renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally.  Dukes, 427 U.S. at 303 ("Legislatures may implement their program step by step,...in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to

17

future regulations.").

Because social and economic legislation like the statute at issue in this case, moreover, carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality, the COPN laws' distinction between certain capital expenditures is plainly a rational approach to achieving the legitimate purposes of limiting healthcare costs and ensuring access. See Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 462 (1988) (quoting Hodel v. Indiana, 452 U.S. 314, 331-332 (1981)).

The Privileges and Immunities guaranteed to Citizens of the United States by the Fourteenth Amendment do not embrace the right to earn a living unburdened by state police power legislation, but instead guarantee only rights which owe their existence to the Federal government, its National character, its Constitution, or its laws, such as the right to come to the seat of government to assert any claim he may have upon that government, to transact any business he may have with it, to seek its protection, to share its offices, to engage in administering its functions, as well as the right of free access to its seaports, through which all operations of foreign commerce are conducted, to the subtreasuries, land offices, and courts of justice in the several States. See Slaughter-House Cases, 83 U.S. 36, 79 (1873) (quoting Crandall v. Nevada, 73 U.S. 35, 44 (1868)). Whatever other rights it may protect, we know they do not

include the right to be free from regulation that allegedly creates local monopolies in favor of local interests and deprives certain individuals the right to exercise their trade, the business to which they have been trained and on which they depend for the support of themselves and their families, because those were the facts in Louisiana that prompted butchers to bring the Slaughter-House Cases. See id. at 59-60, 62; see also, McDonald v. City of Chicago, 561 U.S. ___, ___, 130 S. Ct. 3020, 3028-31, 3132 (2010) (declining to disturb the Slaughter-House holding). And Virginia's COPN laws are unquestionably exercises of the Virginia General Assembly's police power, which extends to all legislation calculated to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State. As only the Supreme Court can overrule its precedents, no matter the vintage, Rodriguez de Quijas v. Shearson/American Exp., Inc., 490 U.S. 477, 484 (1989). If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to the Supreme Court the prerogative of overruling its own decisions, and inasmuch as it has recently refused to overrule a precedent controlling in this case, see McDonald, 561 U.S. at ___, 130 S. Ct. at 3031, 3132, plaintiffs' Privileges and Immunities claim should be dismissed.

19

At bottom, all of plaintiffs' individual rights challenges constitute no more than a difference of opinion over whether the COPN laws actually reduce the cost of medical services, a conclusion that may be controversial as a matter of political economy, but is uncontroversial as a matter of constitutional law. Planned Parenthood of Greater Iowa, Inc. v. Atchison, 126 F.3d 1042, 1048 (8th Cir. 1997) (reciting that CON laws in general have been recognized as a valid means of furthering a legitimate state interest and collecting cases). Any complaints should be directed to the legislature, not to the courts. Lee Optical, 348 U.S. at 488. With Virginia's history of revising, and even temporarily repealing, the COPN laws, there is reason to believe that such appeals may be availing. But, courts should not strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought, where a rational basis supports them.

Plaintiffs allege that the COPN laws exceed the Commonwealth's police power by impinging on regulatory turf delegated to Congress' exclusive purview, although again without alleging a plausible claim upon which relief may be granted. The negative implication of the Commerce Clause, that States may not erect barriers to interstate trade, McBurney v. Young, 667 F.3d 454, 468 (4th Cir. 2012) (quoting Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 337 (2008) and Dennis

v. Higgins, 498 U.S. 439, 446 (1991)), seeks to prevent economic Balkanization, while allowing for a degree of local autonomy. Davis, 553 U.S. at 338. It furthers these purposes by invalidating state laws that fall into two categories, the first being state laws that discriminate facially, in their practical effect, or in their purpose against interstate commerce, by providing preferred treatment to in-state over out-of-state economic interests. Such favoritism is virtually per se invalid. McBurney, 667 F.3d at 468. The second category, state laws that unjustifiably burden the interstate flow of articles of commerce, Brown v. Hovatter, 561 F.3d 357, 363 (4th Cir. 2009) (quoting Ore. Waste Sys., Inc. v. Dep't of Envtl. Quality of Ore., 511 U.S. 93, 98 (1994)), are generally upheld unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits. Brown, 561 F.3d at 363 (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).

Although plaintiffs assert that protectionistic discrimination is present here, that is a mere conclusion supported by no allegation of fact or provision of state law. Virginia's COPN laws apply to persons seeking to obtain certain medical equipment, offer certain medical services, or build certain medical facilities, without regard to the applicant's, owner's, or provider's place of current or past domicile. While it is true that plaintiffs are non-resident companies owned and operated by non-residents that are subject to

21

the burdens imposed by the COPN laws, *so is everyone else* who seeks

to set-up shop and make certain capital expenditures in the

Commonwealth.   See Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 36

(1980) (holding that a law is not facially discriminatory because

it "visits its effects equally upon both interstate and local

business").  Plaintiffs' complaint also fails to allege that, while

facially neutral, the persons primarily affected by the COPN are

out-of-state medical service providers, rather than all medical

service providers seeking to make certain capital expenditures.   See

Yamaha Motor Corp. U.S.A. v. Jim's Motorcycle, Inc., 401 F.3d 560,

573 (4th Cir. 2005) (finding an unjustifiable burden on the flow of

interstate commerce from a facially neutral state law because the

law "imposes . . . heavy burdens predominantly on out-of-state

interests" that, as a matter of fact, fell on no Virginia firms).

Stifling competition is plainly not the purpose or effect of

the COPN laws because one of the factors that must be considered in

determining whether to grant a certificate is the extent to which

the grant would foster institutional competition between service

providers.   See Va. Code Ann. § 32.1-102.3(B)(4).  In that vein, it

bears noting that the Commissioner granted 45 of the 53 applications

for a certificate in the Commonwealth's Fiscal year 2011, approving

total expenditures of over 730 million dollars, while denying

proposed capital expenditures of approximately 44 million dollars.

Any burden on interstate commerce is incidental. See WLR Foods, Inc.
v. Tyson Foods, Inc., 65 F.3d 1172, 1181-82 (4th Cir. 1995) (rejecting
a claim that Virginia statutes that "increase the difficulty or
expense of gaining control of a Virginia corporation" for both
in-state and out-of-state takeover bidders, do more than "impose some
incidental burden on interstate commerce"). Therefore, the
allegation of facial discrimination, or discriminatory purpose or
effect, against non-resident persons or goods is without foundation.

Turning to the Pike balancing test, the Commonwealth has a
legitimate local purpose, i.e., reducing health care costs in
Virginia by preventing wasteful redundancy resulting from
unnecessary capital medical expenditures. Both the regulation of
health and of the medical profession are clearly within the reach
of traditional state regulation. In support of an incidental
effects claim, plaintiffs allege that the flow of interstate commerce
in the interstate markets for the sale of imaging technology like
CT scanners and MRI machines and for the provision of medical
services, including colon-cancer screening and treatment and
radiology services is burdened by the COPN laws. The only factual
allegations offered to demonstrate that the flow of interstate
commerce in these two markets is more than incidentally burdened are
that most such machines like those Plaintiffs seek to buy are
manufactured outside of Virginia and that Plaintiffs themselves

provide medical services in interstate commerce, along with their employees and their patients move across state lines to provide these medical services.

Accepting these allegations as true, they do not establish any substantial burden on the flow of interstate commerce, but suggest merely that Plaintiffs, two relatively small businesses, would likely open a couple offices in Virginia, perhaps traveling on occasion between Virginia and other mid-Atlantic states and perhaps purchasing, at most, a couple of MRI machines or CT scanners from outside the State.

The plaintiffs have offered nothing but conclusory assertions claiming substantial burdens, and no legitimate local benefits. These recitals of the elements of a cause of action, supported by mere conclusory statements do not state a Dormant Commerce Clause claim upon which relief may be granted, see A Soc'y Without a Name, 655 F.3d at 346 (quoting Ashcroft, 556 U.S. at 678-79), because they utterly fail to plausibly plead that the burden they suffer as potential participants in the flow of interstate commerce, by purchasing medical equipment, is substantial or that it "is clearly excessive in relation to the putative local benefits of controlling healthcare costs. Pike, 397 U.S. at 142. See, e.g., WLR Foods, 65 F.3d at 1182 (holding that the incidental burden on interstate commerce cause by Virginia statutes that "increase the difficulty

24

or expense of gaining control of a Virginia corporation" for both in-state and out-of-state takeover bidders "is justified by the legitimate interest of the Commonwealth in regulating its corporations.").

For the foregoing reasons, Plaintiffs' complaint should be dismissed for failing to plausibly plead a claim upon which relief may be granted.

An appropriate Order shall issue.


_____/s/_____
Claude M. Hilton
United States District Judge


Alexandria, Virginia
September *14* , 2012